UNITED STATES FEDERAL COURT
SOUTHERN DISTRICT FLORIDA

Timothy Grim, a Florida resident, Lisa Grim, a Florida resident, on behalf of their minor child,

    **Plaintiffs,**

  -vs.-

Residences At Midtown Condominium Association, Inc., a Florida corporation, Peter Ploss, a Florida resident, Gary Cohan, a Florida resident, Sterling Winchester, a Florida resident, Irene Foy, a Florida resident, Larry Schneider, a Florida resident, Holly Galleher, a Florida resident, and Campbell Property Management, a Florida corporation,

    **Defendants.**
_____/

Case Number: 9:20-cv-80754

## VERIFIED COMPLAINT

  **COMES NOW,** Plaintiffs, Timothy and Lisa Grim, on behalf of their minor disabled child, by and through undersigned counsel, and file this Verified Complaint against Defendants Residences at Midtown Condominium Associates, Inc., et al. [collectively, "the Defendants"] and alleges the following in support thereof:

## PARTIES

1. Plaintiffs Lisa and Timothy Grim are *sui juris* individuals who are married to each other and are the owners of a condominium unit located in Residences at Midtown located at 4903 Midtown Lane Unit Number 3406, Palm Beach Gardens, FL 33418.

2. Plaintiffs are the parents of their minor daughter, a person with a qualifying-disability under the Fair Housing Act, and is otherwise *sui juris*.

3. Defendant, Residences at Midtown Condominium Association, Inc. is a Florida non-profit corporation, licensed to and doing business in Palm Beach County, Florida and operates a condominium building located at 4901 Midtown Lane in Palm Beach Gardens, Florida 33418.

4. At all times relevant to this litigation, Defendants, Peter Ploss, Gary Cohan, Sterling Winchester, Irene Foy and Larry Schneider were all members of the Board of Directors for Residences at Midtown Condominium Association, Inc., are all residents of Palm Beach County and were personally involved in each and every discriminatory act alleged herein.

5. Defendant, Campbell Property Management, Inc. is a Florida corporation and at all times relevant to this litigation, was an authorized agent for Defendants, who personally implemented the discriminatory and retaliatory scheme.

6. Defendant Holly Galleher, Licensed Community Association Manager was at all times relevant to this litigation, acting as an agent for Campbell Property Management, Inc. and Residences at Midtown Condominium Association, Inc., is a resident of the state of Florida and was personally involved in each and every discriminatory act alleged herein in the county in which a substantial portion of events took place.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 11 U.S.C. § 1331, 42 U.S.C. § 3613, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the Florida Fair Housing Act Fla. Stat. § 760.20 *et seq.*

9. Venue is proper under 28 U.S.C. § 1391(b)(1) ("a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" and 28 U.S.C. § 1391(b)(2) (the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.")

## FACTUAL BACKGROUND

10. In 2018, Plaintiffs' minor daughter, was hospitalized for high blood pressure and accelerated heart rate. During her 10-day hospital stay, the minor child was diagnosed with postural orthostatic tachycardia syndrome ["POTS"] which is a form of orthostatic intolerance, whereby the autonomic nervous system fails to work in the usual way. Patients diagnosed with this condition experience extreme heat intolerance, fatigue, chest pain, syncope, confusion, blurry vision, dizziness, anxiety, nausea, heart palpitations, migraines among other symptoms. Because of her condition, she is unable stand for any length of time and cannot attend school; instead she is tutored in her home. Oftentimes she is unable get out of bed due to extreme fatigue and is unable to go outside without ventilation.

11. Plaintiffs, Lisa and Timothy Grim and their minor daughter reside in the Residences at Midtown.

12. Lisa and Timothy Grim bring this action against Defendants for themselves and on behalf of their minor disabled daughter alleging that Defendants violated the Fair Housing Act, 42

U.S.C. § 3601 *et seq.* by failing to reasonably accommodate the minor child's disability. The Fair Housing Act bars housing discrimination based on disability.  Under Section 3604(f), "discrimination includes," among other things, a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

13. Due to the minor child's condition, she experiences extreme heat intolerance, so Plaintiffs must keep their dwelling as cold as possible.  Since the minor child is home schooled, she rarely leaves the interior of her dwelling.  One of the only ways that the minor child can be outside is on her balcony, but to alleviate the heat intolerance caused by her disability, she requires a fan for ventilation, otherwise she runs the risk of experiencing dizziness, lightheadedness, and/or fainting spells.

14. Defendants have a Regulation that states in pertinent part:

> To maintain a uniform and pleasing appearance of the exterior of the Condominium building, no awnings, canopy, screens, air conditioning unit, glass enclosures, or other projections shall be attached to, hung, displayed or placed upon the porches, outside walls, doors, windows or to the patio roof or other portions of the Building or on the Common Elements.  Patios and balconies must be kept neat and clean.

15. Since as early October 2019, Plaintiffs have been requesting that the Defendants make a reasonable accommodation for their minor daughter, by allowing a ceiling fan on their balcony which was necessary to afford her an opportunity to enjoy their dwelling.  [See Exhibit "**A**"]

16. Defendants have unduly delayed either granting or denying a modification to its existing policies and practices to accommodate the minor child's disability.  The ceiling fan would eliminate the barrier that prevents the minor child from full enjoyment of the premises and importantly, the ceiling fan would otherwise not create a displeasing appearance of the exterior.

17. The Plaintiffs paid for and installed the ceiling fan at their own expense to help accommodate their disabled minor child to afford her full enjoyment of their dwelling. Plaintiffs agree to remove the fan if they sell the premises to restore the balcony to its former condition.

18. After receiving extensive documentation from the minor child's healthcare providers specifically detailing how her condition causes a deregulation in her body temperature that results in extreme heat fatigue, whereby the minor child cannot enjoy the balcony unless there is ventilation and that problem would be alleviated by a simple ceiling fan, the Defendants continued to delay and ultimately suggested an unreasonable alternative.

19. In or around March 2020, instead of granting the reasonable accommodation, the Defendants, with full knowledge that the minor child is disabled, with symptoms that include, but are not limited to dizziness and fainting, suggested that she plug a pole fan inside the dwelling, and then drag the pole fan onto and off of the balcony if she wants to have full enjoyment the balcony.

20. Plaintiffs have supplied information far beyond which was necessary for the Defendants to determine the minor child's disability and need for a ceiling fan for ventilation. After receiving a verbal request from Plaintiffs, a written request from Plaintiffs and acknowledging receipt of two letters from health care providers which were both rejected as insufficient to establish the need for reasonable accommodation, in or around February 2020, the attorney representing the Defendants then requested that Plaintiffs produce:

> "Specific detail as to the accommodation requested, specific detail and **supportive documentation** as to how Ms. Grim is a person with a disability pursuant to the fair housing laws, specific detail and supportive documentation as to how such disability substantially limits a major life activity, specific detail and supportive documentation as to how the requested accommodation would alleviate the effects of such disability, specific detail and supportive documentation as to how the requested accommodation would alleviate the effects of such disability, specific

detail and supportive documentation as to how the requested documentation is necessary to afford the Owner an equal opportunity to use and enjoy the dwelling.  For example, why is it necessary to install a ceiling fan as opposed to a pole or stand-up fan, documentation and **supporting evidence from a treating physician providing specific detail and supportive documentation as to the treating physician's individual qualifications, background, and, and treatment history with Ms. Grim**."

21. The Defendants have neither approved nor denied the reasonable accommodation yet they fined the Plaintiffs $1,000 for the violation of having a ceiling fan on their balcony.  Plaintiff alleges that the $1,000 fine was demanded in a letter stating that it was a "Late Fee" when that was the first demand sent for the alleged violation.

22. In order to be in compliance with the Board's Rules and Regulations, Plaintiffs have paid the violation fine of $1,000.

23. Plaintiffs have retained the undersigned to represent them in this cause and have agreed to pay them a reasonable fee for their services.

24. Plaintiff has complied with all necessary conditions precedent to the filing of this action, or such conditions precedent have been waived.

## PLAINTIFFS' TIMELINE ATTEMPTS TO SEEK REASONABLE ACCOMMODATION

| EXHIBIT | DATE | DESCRIPTION OF CORRESPONDENCE | SUBSTANCE OF CORRESPONDENCE |
|---|---|---|---|
|  | Late October 2019 | Verbal request from Plaintiffs to Holly Galleher, LCAM of Campbell Property Management | Plaintiffs allege that they verbally requested from Ms. Galleher an accommodation for their disabled daughter to have a ceiling fan because their minor child is unable to regulate her body temperature due to her |

| | | | |
|---|---|---|---|
| | | | disability and the ceiling fan helps her body keep cooler. Ms. Galleher allegedly replied that a ceiling fan is against the rules even if it is for your daughter's disability. She further stated that the Board will make you take it down and they will fine you $1,000 and if you fight this, you will lose. You do not know what these people are capable of. |
| Composite Exhibit "**A**" | | Photos of the subject of the reasonable accommodation; a ceiling fan installed on the balcony of Plaintiffs' dwelling. | Plaintiffs have repeatedly informed Defendants that they would remove the ceiling fan if they moved. |
| Exhibit "**B**" | November 13, 2019 at 10:41a.m. | Letter from Holly Galleher, LCAM of Campbell Property Management acting as an agent for the association on behalf of the Board of Directors for Residences at Midtown Condominium Association, Inc. to the Plaintiff property owners regarding removal of their ceiling fan. | The ceiling fan violates the Rules of the HOA. The purpose of the rule is to maintain a uniform and pleasing appearance of the exterior of the condominium building, no awnings, canopy, screens, air conditioning unit, glass enclosures, or other projections shall be attached to hung, displayed or placed upon the porches, outside walls, doors, windows or to the patio, roof or other portions of the building or on the common elements. Patios and balconies must be kept neat and clean. |
| Exhibit "**C**" | November 13, 2019 at 2:56 p.m. | Letter from Plaintiffs to Holly Galleher directed | Plaintiffs reply to the Board of Directors and |

| | | | |
|---|---|---|---|
| | | to the Board Members requesting a reasonable accommodation for their disabled minor child. | request a reasonable accommodation for the ceiling fan because their daughter is disabled and requires a fan. |
| Exhibit "**D**" | November 13, 2019 at 4:00 p.m. | Reply from Holly Galleher, LCAM of Campbell Property just a little over one hour after Plaintiffs requested a reasonable accommodation for their disabled minor child. | Board of Directors has denied request for variance in the rule stating that Plaintiff's must take down ceiling fan.<br>[This decision was made by the Defendants in one hour.  There was no request for further information.] |
| Exhibit "**E**' | November 19, 2020, | Plaintiffs filed a request for Congressman Brian Mast's assistance. | Request to review their difficulty regarding a reasonable accommodation from their Board of Directors for the HOA for their disabled daughter. |
| Exhibit "**F**" | November 20, 2019, | Email from Jordan R. Sejour, Constituent Services Representative for Congressman Brian Mast's Office to Plaintiffs. | Jordan R. Sejour, acknowledges that he is to advocate on behalf of the Plaintiffs. |
| Exhibit "**G**" | November 26, 2019, | Letter from Congressman Brian Mast to the Assistant Attorney General, Office of Legislative Affairs, Stephen Boyd | Letter regarding Plaintiff's situation regarding the denial of an accommodation for the Plaintiffs' disabled minor child. |
| Exhibit "**H**" | November 26, 2019 | Letter from Mr. Sejour, from Congressman Brian Mast's office to Holly Galleher, Campbell Property. | Mr. Sejour indicates that he is advocating for Plaintiff regarding a reasonable accommodation for their disabled child.<br><br>Mr. Sejour indicates that they have medical documents indicating that the ceiling fan is |

| | | | |
|---|---|---|---|
| | | | required to accommodate the child's disability. |
| Exhibit "**I**" | November 27, 2019 | Letter from Holly Galleher, LCAM of Campbell Property to Mr. Sejour, from Congressman Brian Mast's office. | The Board suggested that the family use a portable fan that they can bring in when not on the patio. |
| Exhibit "**J**" | December 2, 2019 | Letter from Steven G. Rappaport, Sachs Sax Caplan, Attorneys at Law to Mr. Sejour, from Congressman Brian Mast's office. | The letter requesting that Plaintiffs provide documentation to confirm that Plaintiff's child, is in fact, disabled, and that the request for the accommodation is medically necessary in order to address her disability. Further alleging that as of the date of the letter no documentation or evidence of a disability or that the requested accommodation is necessary to treat or alleviate has been provided, claiming that the Board could not conduct a meaningful investigation into this request. |
| Exhibit "**K**" | January 27, 2020 | Letter from Melanie Powlis, PBC Office of Equal Opportunity with photographic attachments of alleged accommodations for other units (with and without disabilities) | Acknowledging receipt of Plaintiffs complaint regarding the denial of a reasonable accommodation for their minor disabled child from Palm Beach County Office of Equal Opportunity. |
| Exhibit "**L**" | February 18, 2020 | Agenda for the Committee Meeting for Residences at Midtown | Plaintiff's ceiling fan (unauthorized architectural |

| | | Condominium Association, Inc. | modification) was listed for discussion and decision. |
|---|---|---|---|
| Exhibit "**M**" | February 19, 2020 | Email from Mr. Sejour to Holly Galleher, Campbell Property Manager. | Mr. Sejour forwards two medical professionals' letters from Dr. Vastola and Emily Johnson, NP regarding Plaintiff's minor disabled child's request for a reasonable accommodation. |
| Exhibit "**N**" | February 19, 2020 | Plaintiffs sent a letter from Emily L. Johnson, NP, NYU Fink Pediatrics Cardiology Associates to the Board of Directors. Dated: November 14, 2019 | Emily Johnson, NP wrote that Plaintiff's daughter has a medical condition whereby a ceiling fan would greatly benefit her symptoms.  Further recommending that Plaintiff's daughter should be able to keep the fan. |
| Exhibit "**O**" | February 19, 2020 | Plaintiffs sent a letter from Dr. David L. Vastola, Board Certified Internal Medicine and Gastroenterology, to the Board of Directors. Dated: November 15, 2019 | Dr. Vastola requested a reasonable accommodation stating that Plaintiff's daughter suffers from a medical illness explaining that the ventilation from the fan would help her temperature exchange problems from her medical condition. |
| Exhibit "**P**" | February 21, 2020 | Letter Steven G. Rappaport, Sachs Sax Caplan, Attorneys at Law to Mr. Sejour, from Congressman Brian Mast's office.cc Ms. Galleher. | Acknowledging receipt of two letters from healthcare providers indicating that they feel that the installation of such fan would be in minor child's best interest.<br><br>Rejecting both letters, Defendants requested further information including but not limited |

|  |  |  | to: supporting evidence from a treating physician providing specific detail and supportive documentation as to the treating physician's individual qualifications, background, and, and treatment history with Ms. Grim. |
|---|---|---|---|
| Exhibit "**Q**" | February 26, 2020 | Letter from Holly Galleher, Campbell Property Management to Plaintiffs with cc to Mr. Sejour. | The Architectural Review Committee recommended to defer the application until additional documentation has been received. |
| Exhibit "**R**" | February 26, 2020 | Second Letter from Emily L. Johnson, NP<br><br>Third Letter from healthcare provider. | POTS causes abnormal elevation in heart rate upon standing which often results in palpitations, lightheadedness, dizziness and sometimes syncope.  Ms. Grim experiences dysregulation of the autonomic nervous system causing fatigue, temperature dysregulation and excessive sweating which make it difficult for Ms. Grim to perform and function basic activities on a daily basis.  She is home-schooled.  The fan would allow Ms. Grim to spend some time outdoors without excessive sweating instead of remaining in the house at all times. This would allow her to |

| | | | |
|---|---|---|---|
| | | | participate in basic activities of daily living like getting fresh air. She is treated with medication which aims to increase blood pressure to prevent her symptoms such as heat intolerance and excessive sweating, but the medication has demonstrated minimal response.  Attachments: minor disabled child's medical charts from 2018. |
| Exhibit "**S**" | March 3, 2020 | Letter from Steven C. Rappaport, Sachs Sax Caplan, Attorneys at Law to Mr. Sejour, from Congressman Brian Mast's office. cc: Holly Galleher, Campbell Property Management. | **Acknowledging receipt of letter establishing need for a fan due to Plaintiff's daughter's disability**.  Requesting why a ceiling fan is required as opposed to a standing/pole fan.  This letter stating **not disapproving, but continuing to delay**. |
| Exhibit "**T**" | March 12, 2020 | **Late Notice**:  **Even though the previous communication stated that they are not disapproving, they issued a fine**.  To the best of Plaintiff's knowledge, the first indication of a fine was a late notice. | From Campbell property $1,000 fine for the ceiling fan. |
| Exhibit "**U**" | April 10, 2020 | Receipt of payment | Plaintiffs paid the $1,000 fine for the alleged violation of having a ceiling fan. |

## **COUNT 1 – FAILURE TO REASONABLY ACCOMMODATE**
**(42 U.S.C. § 3604(f)(3)(B): Fla. Stat. §760.23(9)(b))**

25. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 24 above as though fully set forth herein.

26. After Plaintiffs made a verbal request, and a written request for a reasonable accommodation for their disabled minor child in or around October 2019-November 2019, Defendants requested extensive documentation from healthcare providers to demonstrate that a qualifying-disability existed and that the requested accommodation was necessary to afford the Plaintiffs' daughter with an opportunity to enjoy the dwelling.

27. After receipt of documentation from healthcare providers, Defendants acknowledged that the Plaintiff's minor daughter has a qualifying-disability within the meaning of 42 U.S.C. § 3602(h), a disability which causes symptoms to include, but not be limited to, extreme heat intolerance, lightheadedness, dizziness and fainting spells.

28. Defendants also acknowledged that there was a relationship between the minor child's disability and the need for the ceiling fan to provide ventilation which would provide her the ability to enjoy the balcony.

29. Yet after receipt of documentation that should have been dispositive, in or around March 2020, the Defendants' recommendation that the disabled minor child drag a pole fan on and off the balcony was in reckless disregard of Plaintiffs' rights and indifferent to the medical conditions or needs of Plaintiffs' minor disabled child. They failed to grant Plaintiff's request for accommodation.

30. Plaintiff paid for the ceiling fan themselves, therefore, such accommodation was not an undue financial or administrative burden to Defendants. Plaintiffs would remove the ceiling fan if they sold or moved away from the property as it is not a permanent fixture.

31. Defendants have unduly delayed in making a decision yet assessed a late fine of $1,000 to the homeowners. The late fine was sent without any prior request for payment.

32. As a direct and proximate result of Defendants' failure to accommodate the minor child's qualifying-disability, the continued inquiry has caused the minor child and the Plaintiffs to suffer irreparable loss and injury to include, but not be limited to financial loss, humiliation, emotional distress, and deprivation of a right to equal housing opportunities regardless of disability.

33. Such refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person an equal opportunity to use and enjoy a dwelling, is in violation of the Florida Fair Housing Act Fla. Stat. Chapter 760 and Federal Fair Housing Act 42 U.S.C. § 3604(f)(3)(B).

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, its officers, employees, agents, successors and all other persons in active concert or participation with it to declare that their have violated the Fair Housing Amendments Act, and the Florida Fair Housing Act by discriminating against persons with disabilities; enjoin Defendants, its officers, employees, agents, successors and all other persons in active concert or participation with it from fining Plaintiffs based on the discriminatory practices alleged herein, enjoining Defendants, its officers, employees, agents, successors and all other persons in active concert or participation with it from any future discriminatory conduct against the Plaintiffs based on the unlawful housing practices as described herein and to award Plaintiffs compensatory relief in the amount of $1,000 and punitive damages and attorneys' fees and costs as well as any such further relief this Court deems just and equitable.

Respectfully Submitted:

Dawn M. Alba
Alba Law Office, PA
Attorney for Plaintiffs                 Signed: *Dawn M. Alba, Esq.*
303 Evernia Street, Suite 300 West      Florida Bar Number 112814
Palm Beach, FL 33401
Dawn@Albalawoffice.com
(561) 584-0023

## VERIFICATION OF LISA GRIM

**BEFORE ME**, the undersigned authorized duly authorized to administer oaths, personally appeared LISA GRIM, who states that she has personal knowledge of the facts set forth in this Verified Complaint and that they are true and correct.

By: _____
Lisa Grim

**STATE OF FLORIDA**
**COUNTY OF PALM BEACH**

The foregoing instrument was acknowledged before me this 6th day of May 2020 by Lisa Grim, personally known to me.

Notary Signature: _____
NOTARY PUBLIC





Notary Public State of Florida
Dawn M Alba
My Commission GG 928440
Expires 11/03/2023

## VERIFICATION OF TIMOTHY GRIM

**BEFORE ME**, the undersigned authorized duly authorized to administer oaths, personally appeared TIMOTHY GRIM, who states that she has personal knowledge of the facts set forth in this Verified Complaint and that they are true and correct.

By: _____
Timothy Grim

**STATE OF FLORIDA**
**COUNTY OF PALM BEACH**

The foregoing instrument was acknowledged before me this 6th day of May 2020 by Lisa Grim, personally known to me.

Notary Signature: _____
NOTARY PUBLIC

Notary Public State of Florida
Dawn M Alba
My Commission GG 928440
Expires 11/03/2023